## Case No. 799.

### BALDWIN v. The E. MORRIS.[1]

District Court, D. Connecticut. Feb. 19, 1877.

#### MARITIME LIENS—PRIORITY.

[1. A steamboat registered in New York was purchased by libellant's son, and was taken to Fair Haven, Conn., for repairs. The son had no means of his own or credit in Fair Haven, and a verbal arrangement was made between him and the libellant by which the latter agreed to advance money for the necessary repairs, wages of workmen and seamen, and outfit and stores on the credit of the boat, and to permit her to be taken to the Potomac, in the expectation that her profits there would repay the advances and discharge the lien. Repairs were made upon the vessel accordingly, and her hailing port was changed to Washington, D. C. Held, that libellant had a lien against the steamboat for the repayment of the money expended and advanced upon her credit in a foreign port for necessary repairs and supplies.]

[2. After being repaired, the vessel was taken to Washington, where she arrived January 19, 1876, and where other repairs were made. The owner obtained, on the security of the boat, the indorsement of his note for $1,000, to secure which note and bills, amounting in all to $1,500, a deed of trust to one Lowe was executed. The boat made regular trips on the Potomac from March 9, 1876, to April 13, 1876, but ran in debt. In March or April, 1876, one Hall verbally agreed to purchase one-half of the boat for $2,625, free from the $1,500 mortgage, and paid $1,409 on account thereof. Hall subsequently found that there were about $4,000 claims against the boat, and declined to make any further payments, on the ground that he had already paid for more than one-half of the boat. Prior to June 8, 1876, the owner had be-

come involved in debt, and the boat had been libelled by the crew and by material men. Advances to pay the wages of the crew and some of the claims of the material men were obtained; and June 8, 1876, the first deed was released, and a second deed of trust to secure claims of Washington parties to the amount of $4,577 was made to Lowe. Lowe, Hall, and the persons secured by the deed of trust were all ignorant of libellant's lien, the owner asserting that the boat was free from liens except to Washington creditors. Libellant, however, was not aware of the representations or of the deeds of trust until the boat returned from Washington. On July 6, 1876, the vessel left Washington for New Haven, Conn., and during the remainder of the season plied between New Haven harbor and neighboring watering places, but at a loss. On July 24, 1876, Hall came to New Haven to protect his claim for the advanced purchase money, and met libellant and the owner at the office of his counsel. At this meeting, libellant stated that he had a claim upon the boat for $1,800 or $2,000, but in such terms as to lead Hall to understand that the claim was only against the owner personally. A second mortgage was given to Hall for the $1,409. The libel was filed October 12, 1876. On November 23, 1876, the boat was sold at auction by the trustee under the deed of trust, for $175, subject to all claims on liens. Hall bought the boat from the purchaser for $2,000. Hall, before and after buying the boat, had bought claims secured by the deed of trust, and his total claim at the time of the trial amounted to $5,209. Held: (1) That the libellant's lien had not been lost or waived as against bona fide purchasers, without notice, by libellant's delay, the period of eight months before bringing his libel not being, under the circumstances, an unreasonable time; (2) that, upon the evidence, the libellant was not estopped by concealment or misrepresentation from enforcing his lien against bona fide purchasers; and (3) that libellant's lien was superior to the title of Hall either as mortgagee or purchaser.]

[In admiralty. Libel in rem by Murray L. Baldwin against the steamboat E. Morris. Joseph T. H. Hall interposed a claim of title to the vessel. Decree for libellant.]

Charles Ives, for libellant.

Wm. K. Townsend and Henry G. Newton, for defendant.

SHIPMAN, District Judge. This is a libel in rem against the steamboat E. Morris upon a maritime lien for money alleged to have been expended for repairs and supplies, or loaned to the captain and owner to pay for repairs and supplies in a foreign port, upon the credit of said boat. Joseph T. B. Hall appears to defend, claiming the title to said steamboat.

The facts in the case are as follows: Theodore E. Baldwin, a steamboat captain, an inhabitant and resident of Washington, in the District of Columbia, after Nov. 29th, 1873, and a son of the libellant, purchased for the sum of $1,500, on August 19th, 1875, the steamboat E. Morris, in the city of New York, where she was then registered. The bill of sale was duly recorded. The vessel was a side-wheel tug boat, had been laid up at the wharf for two or three years, and was very much out of repair. The captain intended to run her himself as a freight and passenger boat upon the Potomac river, and

bought her for that purpose. Before she could be used upon any waters, she needed extensive repairs both to her boiler, engine, and wood work. She was towed to Fair Haven, in this district, for the purpose of repairs, where there are a marine railway, ship yards, steam engine shops, and conveniences for the repairs of vessels. His father, the libellant, lived in Fair Haven, and was an experienced owner of vessels. Theodore E. Baldwin returned to Washington, leaving the repairs of the boat under the general oversight of his father. The captain had no means of his own, or credit in Fair Haven, which was well known to the libellant; and whatever repairs and supplies were furnished must be furnished either upon the credit of the boat, or upon the responsibility of some other person than the owner. A verbal arrangement was made between him and the libellant by which the latter agreed to advance money for the payment of the necessary repairs, wages of the workmen and seamen, her necessary outfit and stores upon the credit of the boat, to permit her to be taken to the Potomac, and go into business there, in the expectation and belief that her profits would be able to repay the advances and discharge the lien.

Serious and extensive repairs were made upon her under this arrangement, all of which were necessary. The engine was taken to pieces, and was repaired; new ash pans were cast; new crank was made; bilge pump was repaired; mast was taken out; wheels were repaired; decks were canvassed and painted; bells were put on the engine; she was caulked; graving pieces were put on the hull; steam pipe was repaired; her name and hailing port, "Washington, D. C.," were painted on the stern; and stores and outfit were purchased. These repairs occupied from September, 1875, to December, 1875. She then left for New York, to be inspected, and to receive a portion of her outfit, which could not be bought in Fair Haven. She arrived in Washington January 19, 1876. Before she left Fair Haven, the libellant advanced money to the captain for the purpose of procuring repairs and an outfit, which was spent in necessary repairs and outfit of the boat and wages; paid the wages of the workmen necessarily employed on the steamer, and bills for the necessary stores and outfit thereof, and for materials and labor necessarily used and employed on said steamer in said necessary repairs,—all of which money so spent and advanced amounted to the sum of $1,722.26, and was repaid therefor the sum of $413.00, leaving the balance due, for moneys necessarily expended in and upon the repairs, outfit, and wages, the sum of $1,308.76. The bill of the libellant, as presented, was the sum of $2,095.27, from which I deduct the sum of $150, charged for his own services in the oversight of said repairs, upon the ground that this was a voluntary service,

and not rendered under a contract of hiring; also the sum of $143.66, expended by the captain from the moneys loaned to him in other than necessary repairs and supplies; the sum of $17, expended by the libellant for lawyer's fees; and the sum of $62.35, expended after the return of the boat from Washington, and not coming within the contract or agreement heretofore named, and not advanced on the credit of the boat. The said sum of $1,308.76 was all advanced and expended for necessary repairs and supplies upon the credit of the boat in a foreign port, which supplies could not have been procured upon the credit of the owner.

After the boat arrived in Washington, the captain deemed best, in order to fit her for the passenger trade, to put on a new upper saloon, and make other repairs; and for this purpose, he obtained, on the security of the boat, the endorsement of John B. Archer and Levi P. Wright upon his note of $1,000. Other expenses were incurred; and to secure all the bills and said endorsement, amounting to $1,500, a deed of trust of the boat was executed by the owner to R. P. Lowe. She was duly enrolled at the port of Georgetown, March 1, 1876, and licensed for the coasting trade. The boat commenced to make regular trips up and down the Potomac river on March 9th, 1876, but was unsuccessful, lost money, ran in debt, and stopped running April 13th, 1876. After the execution of said deed of trust, and in March or April, 1876, Joseph T. H. Hall verbally agreed with the owner to purchase one-half of the boat for $2,625, free from the $1,500 mortgage, and paid $1,409 toward the purchase money, but subsequently found that there were about $4,000 claims and debts upon account of materials furnished for the boat, and declined to make any more payments upon the ground that he had already paid for more than one-half of the boat.

Before June 8th, 1876, T. E. Baldwin had become burdened with debt. The boat was libelled by the crew, who were kept on board after she stopped her trips, and was released on bond, and was also libelled by material men of Washington for coal supplies furnished in her home port. The first deed of trust was surrendered and released. Between June 8th and July 6th, the seamen's wages, amounting to $916.72, were paid by J. B. Archer and L. P. Wright. On June 8th, 1876, a new deed of trust was drawn, and was executed on July 6th, 1876, by the owner to R. P. Lowe, to secure all the debts of Archer Wright and of the material men in Washington, to the amount of $4,577.63, and the boat was released from attachment. All the persons named in said deed and said Hall were ignorant of the alleged lien of the libellant, of which the owner did not inform them, but asserted that she was free from liens except as to said Washington creditors. They were guilty of no laches, and acted in good faith. The conduct of the owner in

misrepresenting to his Washington creditors the nature and extent of his father's lien was extremely reprehensible, but the libellant was not aware of these representations, and did not know of the mortgages or deeds of trust until after the boat returned from Washington.

On July 6th, 1876, the boat left Washington for New Haven, for the purpose of running as an excursion boat from New Haven harbor to the watering places in the vicinity. She commenced her trips forthwith, and ran regularly until September, when the season closed. In the meantime she had lost money. On July 24th, 1876, said Hall came to New Haven to look after his claim for said advanced purchase money for said boat, and met, at the office of his counsel, the libellant and the owner. The negotiations resulted in the owner's giving said Hall a second mortgage upon the boat for $1,409. An important point in this part of the case is the alleged concealment upon the part of the libellant of his lien, and a consequent estoppel in pais against now asserting it as against the defendant. I find that at this interview the libellant did substantially declare to said Hall that he had a claim upon the boat for $1,800 or $2,000, but that said Hall was of the opinion that this debt was not a debt against the boat, but was a personal claim against his son, and that the assertion of the libellant that he had a claim against the boat made no impression upon the mind or memory of either said Hall or his counsel, who did not suppose that any lien existed, and took the second mortgage under that supposition; but I cannot find that the libellant intentionally or actually concealed or withheld the knowledge of said lien from said Hall, or wilfully or knowingly caused said Hall to believe that no lien existed.

The libel was filed October 12th, 1876, and the boat was taken into the custody of the marshal. She was sold at public auction by the trustee named in the deed of trust on November 23d, 1876, subject to all claims or liens, valid or invalid, to John B. Archer, for $175, who on December 5th, 1876, sold her to said Hall for $2,500. Said Hall heard from his counsel about November 1st, 1876, that the libellant claimed a lien upon the vessel. Before that he had purchased the interest of L. P. Wright and A. R. Shepherd, two of the cestuis que trustent, as hereinafter named, in the vessel; and he has expended in all upon the boat and the purchase of claims against her the sum of $5,215, as follows: Paid to T. E. Baldwin $1,409, to John B. Archer $2,500, to L. P. Wright $1,256, to A. R. Shepherd $50. He has agreed to purchase Emory & Co.'s claim for a coal bill of $198.27, which is named in the second deed of trust. The market value of the boat is from $1,500 to $2,500.

The conclusions of law from the foregoing facts are:

1st. The libellant acquired a valid maritime lien against said steamboat for the repayment of said sum of $1,308.76, expended and advanced for necessary repairs and supplies in a foreign port, upon her credit, with interest from January 19th, 1876.

2d. Said lien has not been lost or waived as against the bona fide purchasers without notice of said lien, by any delay on the part of the libellant in enforcing his lien. The period of eight months before bringing his libel was, under the circumstances of this case, not an unreasonable time.

3d. The libellant is not estopped by concealment or misrepresentation from enforcing his lien against bona fide purchasers.

4th. The lien of said libellant is superior to the title of said Hall, either as mortgagee or purchaser.

Let a decree be entered for the payment to the libellant of the sum of $1,308.76, and interest from January 19th, 1876, and costs, and, in default of payment, for the condemnation and sale of said boat.